IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HAROLD DEAN CANFIELD      )
                           )
v.                            )     No. 3:12-0050
                           )
CAROLYN W. COLVIN         )
     Acting Commissioner of    )
     Social Security           )

To:    The Honorable Waverly D. Crenshaw, District Judge

# R E P O R T   A N D   R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") as provided under Title II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12),[1] to which Defendant has filed a response (Docket Entry No. 18). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 21).

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) be **GRANTED** and the decision of the Commissioner be **REVERSED** and **REMANDED** for further administrative proceedings.

---

[1] Plaintiff initially filed a motion for judgment on the administrative record on April 17, 2012 (Docket Entry No. 11), but subsequently refiled his motion on April 18, 2012 (Docket Entry No. 12).

# I. INTRODUCTION

Plaintiff filed an application for a period of disability, DIB, and SSI on September 21, 2007. *See* Transcript of the Administrative Record (Docket Entry No. 8) at 78, 80, 82, 84.[2] He alleged a disability onset date of September 17, 2007, but later amended this to July 21, 2008. AR 11, 78, 80, 82, 84. Plaintiff asserted that he was unable to work because of high blood pressure, coronary heart disease, a heart attack, and heart surgery. AR 79, 81, 83, 85.

Plaintiff's applications were denied initially and upon reconsideration. AR 78-85. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Daniel E. Whitney on June 17, 2010. AR 25. On July 15, 2010, the ALJ denied the claim. AR 8-10. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 10, 2011 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on July 15, 2010. AR 8-10. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since September 17, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

3. The claimant has the following severe impairments: coronary artery disease; Tourette syndrome; and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 25 pounds occasionally and 12½ pounds frequently; stand and/or walk 4 hours out of 8 hours; sit 7 hours out of 8 hours; understand, remember, and carry out simple and detailed instructions and to make judgments on simple and detailed work-related decisions; and occasionally interact with the public.

\*\*\*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

7. The claimant was born on April 6, 1960 and was 47 years old, which is defined as a younger individual, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a high school (12th grade) education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\*\*\*

11. The claimant has not been under a "disability" as defined in the Social Security Act, since September 17, 2007, through the date of this decision (20 CFR 404.1520(g), and 416.920(g)).

AR 13-20.


# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.


# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*,

402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot

satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra*.

If the claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff

was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 13-20.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) failing to consider all his severe impairments; (2) discounting the mental Medical Source Statement ("MSS") completed by Dr. Kirby Pate; (3) improperly evaluating the credibility of Plaintiff's statements in violation of Social Security Ruling ("SSR") 96-7p; and (4) assigning an RFC that is inconsistent with the medical evidence. DE 12 at 1.[3] Plaintiff therefore requests that the Commissioner's decision be reversed and benefits awarded, or, alternatively, that this case be remanded for further consideration by a different ALJ. *Id.* at 14.

Sentence four of 42 U.S.C. § 405(g) states the following:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision

---

[3] Plaintiff additionally lists as an assertion of error: "The ALJ failed to consider the Plaintiff's obesity." DE 12-1 at 1. However, Plaintiff also makes this argument under his first assertion of error. *Id.* at 6. The Court will therefore address this argument when evaluating the first assertion of error.

is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court addresses Plaintiff's assertions of error below.

**1. The ALJ's consideration of Plaintiff's severe impairments.**

Although the ALJ determined that coronary artery disease, Tourette syndrome, and bipolar disorder represent severe impairments, Plaintiff contends that the ALJ failed to consider his additional severe impairments, which he claims include obstructive sleep apnea, ischemic heart disease, hypertension, and obesity. DE 12-1 at 6. Plaintiff points to the consultative examination performed by Dr. Lloyd Huang, who diagnosed Plaintiff with ischemic heart disease, hypertension, a history of myocardial infarction, mild congestive heart failure, morbid obesity, and hyperlipidemia. *Id.*; AR 278. Plaintiff argues that such diagnoses are "supported by the opinions of his treating physicians" (DE 12-1 at 6), but fails to cite any such treating physicians in his brief. In fact, the only medical note cited by Plaintiff is a chart titled "Problem List," which indicates that Plaintiff utilizes a continuous positive airway pressure ("CPAP") machine to treat obstructive sleep apnea. AR 326.

The Sixth Circuit has held that the mere diagnosis of an impairment "says nothing about the severity of the condition." *Higgs,* 880 F.2d at 863. *See also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (internal citation omitted). Plaintiff relies

on the additional diagnoses in Dr. Huang's report, but there is no suggestion from Dr. Huang that such conditions represent severe impairments. Because the ALJ determined that coronary artery disease, Tourette syndrome, and bipolar disorder were conditions that represent severe impairments in this case, and thus proceeded past the severity step to consider the combined effect of all alleged impairments, the ALJ's failure to discuss each additional diagnosis and his reasons for deeming them nonsevere cannot represent reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Plaintiff further claims that the additional conditions identified in Dr. Huang's report should be considered severe impairments based on the ALJ's decision to give "controlling weight" to the report. DE 12-1 at 6. Plaintiff appears to refer to the ALJ's statement that he "accorded great weight" to Dr. Huang's opinion. AR 17. However, Plaintiff cites no case law or regulation that requires an ALJ to conclude that each diagnosis contained in a report to which he grants great weight represents a severe impairment. In fact, relevant case law holds the opposite. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 118 (6th Cir. 2010) ("[Claimant] cites no authority that it was unreasonable for the ALJ to accept [the consultative physician's] opinion regarding [claimant's] current functioning, while declining to adopt his diagnosis. One's functioning is more closely linked to specific, observable, objective evidence, while a diagnosis encapsulates a broad range of symptoms."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Bennett v. Colvin*, No. 3:13-cv-1176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) ("[A]n ALJ who accords 'great weight' to an opinion is not required to adopt that opinion wholesale."); *Matejka v.*

*Comm'r of Soc. Sec. Admin.*, No. 1:13-cv-1933, 2014 WL 3197437, at *13 (N.D. Ohio July 8, 2014) ("Even when an ALJ accords 'significant weight' to a medical opinion, the ALJ is not required to adopt every opinion expressed by the medical expert.").

Moreover, the ALJ incorporated all of the physical limitations contained in Dr. Huang's report into the RFC and explained his reasons for doing so (AR 14, 16-17, 278-79), as was required. *Cf. Moore v. Colvin*, No. 2:14-cv-455, 2015 WL 5675805, at *7 (S.D. Ohio Sept. 28, 2015) ("[T]he ALJ's failure to explain why he did not adopt the limitations of medical sources to whose opinion he afforded 'significant' weight constitutes a reversible error."). Plaintiff makes no argument that the ALJ erred in his consideration of the restrictions recommended by Dr. Huang, nor does he point to any evidence indicating that the additional diagnoses contained in Dr. Huang's report cause functional limitations. Plaintiff's argument is therefore without merit.

Plaintiff additionally cites SSR 02-1p to claim that the ALJ failed to consider obesity in concluding that he is not disabled. DE 12-1 at 11. Plaintiff's lone argument posits that the ALJ "did not consider the claimant's obesity and what effect his obesity would have on his ability to work." *Id.*[4] Plaintiff is again mistaken, as the ALJ specifically discussed obesity in the opinion and noted that there "is no medical evidence from treating sources or other examining sources which attribute any functional limitations based on obesity." AR 14. This weighs against Plaintiff's argument, as it is the claimant's burden to establish that his obesity imposes any

---

[4] It does not go unnoticed that counsel for Plaintiff included the exact same three-sentence argument regarding obesity in both his brief and reply brief. DE 12-1 at 11; DE 21 at 5. In fact, excluding quoted portions from SSR 96-7p and Sixth Circuit case law, counsel for Plaintiff appears to have copied and pasted the entire argument portion from his brief verbatim into his reply brief. DE 12-1 at 6-14; DE 21 at 2-8. This rote duplication is not particularly helpful and does little to advance Plaintiff's position. Regardless, given the duplication, the Court will refer exclusively to Plaintiff's original brief in its analysis.

functional limitations. *Boles v. Colvin*, No. 2:12-cv-0079, 2015 WL 4506174, at *2 (M.D. Tenn. July 23, 2015) (citing *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004)).

The Court also notes that Dr. Huang diagnosed Plaintiff with morbid obesity and stated that Plaintiff's functional status "would be improved with weight loss." AR 278. By utilizing Dr. Huang's opinion in fashioning Plaintiff's RFC, as discussed *supra*, the ALJ incorporated any impact that obesity has on Plaintiff's ability to work into the RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010). *See also Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (finding that an ALJ does not need to explicitly mention obesity if he credits the opinion of an expert who considered obesity). The Court thus finds that substantial evidence supports the ALJ's consideration of Plaintiff's obesity, and accordingly rejects this assertion of error.

### 2. The ALJ's consideration of Dr. Kirby Pate's MSS.

Plaintiff next argues that the ALJ erred by failing to adequately consider the MSS completed by Dr. Pate. Plaintiff claims that the mental limitations contained in this MSS are supported by the medical evidence of record, and therefore should have been accorded controlling weight by the ALJ. DE 12-1 at 8. Plaintiff additionally argues that the ALJ did not provide "sufficient reasons" for discounting Dr. Pate's opinion. *Id.*

Plaintiff cites SSR 96-2p in support of his argument, which delineates the circumstances under which a treating source's opinion must be given controlling weight. *See* 1996 WL, 374188. SSR 96-2p explicitly references the requirement under 20 C.F.R. §§ 404.1527 and 416.927 that the ALJ provide "good reasons" for the weight given to the treating physician's medical opinion. *Id.* at *5. Plaintiff fails, however, to indicate whether Dr. Pate actually served

as his treating physician at any point in time. Despite Plaintiff's claim that Dr. Pate is a medical provider associated with the mental health facility Centerstone, there is no mention of Dr. Pate in any of the office notes documenting Plaintiff's treatment at Centerstone. In fact, as noted by the ALJ, there is no evidence that Dr. Pate ever treated Plaintiff at any point in time. AR 18. Dr. Pate thus does not qualify as a "treating physician," which is defined as a medical source that a claimant sees "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1502. There is no indication in the case at bar that Plaintiff has ever seen Dr. Pate, thus precluding a finding that Plaintiff has treated with Dr. Pate with sufficient frequency to render him a treating source. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506-07 (6th Cir. 2006) (holding that even two or three office visits "often will not suffice for an ongoing treatment relationship"). Plaintiff's reliance on the treating physician requirements contained in SSR 96-2p is therefore misplaced.

Plaintiff additionally contends that Dr. Pate's opinion should have received controlling weight because he "wrote notes on the MSS to support his opinions." DE 12-1 at 8. The "notes" alluded to by Plaintiff appear to reference the portions of the MSS in which Dr. Pate was asked to provide objective evidence to support his determination that Plaintiff had "marked" limitations in several subcategories relating to his ability to understand, remember, and carry out instructions, as well as his ability to interact appropriately with other people. AR 308-09. The MSS specifically prompts Dr. Pate to "[i]dentify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support [his] assessment" in each of these two areas. *Id*. In response, Dr. Pate stated the following:

> [Plaintiff] is unable to initiate and participate in activities without supervision. He has difficulty sustaining focus long enough to complete tasks … [Plaintiff] has angry outbursts and has difficulty interacting appropriately with others.

*Id*. This explanation is conclusory, however, and provides no support for the severe mental limitations expressed in the MSS. The statements are further undermined by the fact that they represent a diagnostic impression rendered by a provider who, based on the record, never treated Plaintiff. This directly refutes Plaintiff's claim that Dr. Pate "was familiar with the claimant's medical conditions and limitations[.]" DE 12-1 at 8.

Plaintiff also argues that Dr. Pate's opinion is "fully support[ed]" by the medical evidence of record. *Id*. Plaintiff fails to cite any specific office note to bolster this broad assertion, and instead claims generally that the Centerstone records demonstrate that he is easily agitated, experiences "anger outbursts," and has difficulty with concentration. *Id*. It is true that Plaintiff expressed anger and concentration problems during his treatment with Centerstone, which spanned from August of 2008 through March of 2010. AR 359, 428. However, Plaintiff stated during his last documented office visit at Centerstone in March of 2010 that he was "doing pretty well" following resumption of his prescription medication regimen. AR 359. This is significant in light of Plaintiff's admission during his penultimate visit in January of 2010 that he had not taken medication for over one year. AR 346. Plaintiff thus demonstrated improvement in his symptoms when taking his medication as directed, as discussed by the ALJ. AR 18.

Finally, the Court finds Plaintiff's reliance on the GAF scores he received during his treatment at Centerstone to be unpersuasive. For one, Plaintiff simply lists the GAF scores he was assigned during two office visits, 45 and 50, and fails to explain how these scores actually support Dr. Pate's findings. Additionally, the Sixth Circuit has repeatedly held that GAF scores are not necessary to an ALJ's analysis of a claimant's mental limitations. *See Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x at 511 ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (internal citation omitted); *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) ("The GAF scores … are not raw medical data and do not necessarily indicate improved symptoms or mental functioning.") (internal citations omitted). Furthermore, these two GAF scores standing alone are not enough to refute the ALJ's findings regarding Plaintiff's independent level of functioning and his activities of daily living. *See Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013) ("[T]he ALJ was not required to consider [the claimant's] GAF scores … and, in any case, the scores were not sufficient to undermine the ALJ's analysis.") (internal citations omitted). The GAF scores are thus insufficient to negate the substantial evidence that supports the ALJ's rejection of Dr. Pate's opinion.

In conclusion, the Court finds that Dr. Pate does not represent a treating physician, thus making the "treating source" rule outlined in SSR 96-2p inapplicable to the ALJ's analysis, and additionally finds that the ALJ appropriately rejected the opinion based on Dr. Pate's lack of familiarity with Plaintiff's condition, Plaintiff's independent daily functioning, and the improvement in Plaintiff's mental condition with adherence to his prescription medication regimen.

### 3. The ALJ's credibility determination.

Plaintiff contends that the ALJ improperly assessed his credibility in violation of SSR 96-7p.[5] DE 12-1 at 9-10. Plaintiff argues that the ALJ improperly relied on his ability to "perform some activity on a very minimal basis" to discount the credibility of his testimony. *Id.* at 11.

---

[5] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. However, because Plaintiff's complaint was filed in January of 2012, SSR 96-7p applies to the Court's analysis of this claim.

Plaintiff also claims that the ALJ failed to specify the weight assigned to Plaintiff's testimony. *Id.* at 11.

The latter argument offered by Plaintiff is simply incorrect, as demonstrated by the following excerpt:

> Based upon consideration and evaluation of the evidence, the claimant's medically determinable impairments could not reasonably be expected to cause the alleged symptoms and the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms *are not credible* to the extent alleged. The objective medical findings relating to his coronary artery disease show it is stable and Tourette syndrome did well with Haldol treatment. He ambulates independently, drives, watches television, washes dishes, pays bills, attends church, attends counseling and medical appointments, and takes care of household needs. He does well when he takes his medications as prescribed on a consistent basis and the record does not show any side effects from prescribed medication that caused significant limitations of function that lasted for a period of twelve months. The evidence simply does not support the claimant's allegations of disability.

AR 18 (emphasis added). The ALJ not only determined that Plaintiff's testimony was not credible, but also provided reasons for discounting Plaintiff's statements regarding the severity of both his physical and mental impairments. Plaintiff tersely claims that there is "medical evidence which shows that the Plaintiff is disabled" (DE 12-1 at 11), but makes no attempt to cite any evidence that contradicts the ALJ's findings. The Court declines to make Plaintiff's case for him, as it is Plaintiff's ultimate burden to prove the existence of a disabling condition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (citing *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984)). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal citations omitted).

Plaintiff additionally cites the Sixth Circuit's holding that a claimant's capacity for activities such as driving, grocery shopping, and cleaning "[do] not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity." *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967). While this is true, the ALJ did not base his credibility determination solely on Plaintiff's daily activities, but additionally found that Plaintiff's symptoms, both mental and physical, were controlled when he takes his medication as directed. AR 18. The ALJ considered Plaintiff's daily activities in conjunction with his analysis of the treatment records and the objective medical findings, as was required of him. *See* 20 C.F.R. § 404.1529 (The ALJ is required to consider the "objective medical evidence and other evidence … include[ing] statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, *daily activities*, efforts to work ….") (emphasis added). The Court also notes that Plaintiff expressed plans to return to work on multiple occasions during his treatment at Centerstone, and reported in March of 2009 that he "ha[d] a line on [a] construction job." AR 381, 388. This includes a statement from one of his counselors at Centerstone, Barbara Strausser, indicating that Plaintiff had not returned to work as of March 19, 2009 because he wanted to "wait to hear about his disability" (AR 386), thus suggesting an ability to work that is inconsistent with his claim that he suffers from a disabling condition. *Tate v. Comm'r of Soc. Sec.*, No. 2:13-cv-11473, 2014 WL 4536929, at *22 (E.D. Mich. Sept. 11, 2014) (affirming ALJ's credibility finding which noted that claimant's ability to work at some level, even if not substantial gainful activity, was not consistent with her allegations of disabling conditions).

As long as an ALJ provides substantial, legitimate evidence to support his conclusion regarding a claimant's credibility, the Court must not second-guess this determination. *Ulman v.*

*Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). In the instant case, the ALJ provided such evidence in concluding that Plaintiff's statements were not credible, and Plaintiff points to no evidence that undermines this conclusion. The Court therefore rejects this assertion of error.

**4. The RFC determination.**

Plaintiff finally argues that the ALJ failed to consider the entire record of evidence in reaching his RFC determination. Plaintiff claims that Dr. Huang's opinion, which was accorded "great weight" by the ALJ (AR 17), limits Plaintiff to sedentary work while the vocational expert ("VE") identified only light and medium-level jobs during the hearing that Plaintiff would be able to perform due to his impairments. DE 12-1 at 12. Plaintiff also reiterates his claim that Dr. Pate's opinion should have been given controlling weight based on its consistency with the notes documenting his treatment at Centerstone.[6] *Id*. at 13.

As discussed *supra*, the Court finds no error in the ALJ's determination that Dr. Pate is not a treating physician as defined under 20 C.F.R. § 404.1502. There is no office note documenting any treatment with Dr. Pate, and Plaintiff conceded during the hearing that he could not remember ever treating with Dr. Pate. AR 53-54. Plaintiff's continued claims that Dr. Pate is a treating physician without providing an iota of supporting proof are misleading at best.

Plaintiff's additional claim that Dr. Huang limited him to sedentary work is based on the following excerpt:

---

[6] Confusingly, Plaintiff states in his brief that "Dr. Pate is *not* entitled to controlling weight as he is a treating physician, and his opinion was certainly entitled to more weight than that of the state agency reviewing physical upon which the Judge relied in making his RFC findings." DE 12-1 at 13 (emphasis added). Plaintiff also copied and pasted this sentence into his reply brief, as it contains the identical claim that "Dr. Pate is *not* entitled to controlling weight …." DE 21 at 7 (emphasis added). Despite Plaintiff's errant duplication, a contextual analysis suggests that Plaintiff was attempting to write, "Dr. Pate is entitled to controlling weight as he is a treating physician …."

> I estimate [Plaintiff] as a New York Heart Class I to II, status post stenting of his LAD. Ejection fraction is 40 to 50 percent and normal heart size on his chest x-ray. His functional status would be improved with weight loss. *Perhaps a vocational rehabilitation for a sedentary job would be helpful.* Regarding [Plaintiff's] work-related capacity, I estimate the [Plaintiff] can occasionally lift 25 pounds, frequent[ly] lift 12-1/2 pounds, can stand and walk for 4 hours of an 8-hour day, and sit for 7 hours of an 8-hour day with routine breaks.

AR 278-79 (emphasis added). Contrary to Plaintiff's claim, this statement does not limit Plaintiff to sedentary work, but instead suggests that vocational rehabilitation for a sedentary job might benefit Plaintiff. The ALJ reasonably concluded that Dr. Huang's opinion as to Plaintiff's physical limitations encompassed the subsequent statement, as indicated by the opening phrase: "Regarding [Plaintiff's] work-related capacity …." *Id*. The Court therefore finds no inconsistency in Dr. Huang's RFC assessment, and thus no error in the ALJ's failure to reference Dr. Huang's comment that vocational rehabilitation would "[p]erhaps … be helpful."

During the hearing, the ALJ posed a hypothetical to the VE consisting of limitations that ultimately comprised the assigned RFC, based in part on the opinion rendered by Dr. Huang. AR 55. In response, the VE described multiple positions at the light and unskilled level that exist in substantial numbers in the national and regional economy that Plaintiff would be able to undertake despite his limitations. AR 55-56. This is permissible, as a VE's testimony regarding the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the claimant's physical and mental impairments. *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *See Varley v. Sec'y of HHS,* 820 F.2d 777, 779 (6th Cir. 1987)).

Here, Plaintiff faults the ALJ for failing to incorporate the limitations recommended by Dr. Pate. DE 12-1 at 13. However, the ALJ explicitly rejected Dr. Pate's opinion, as discussed *supra*. The ALJ was therefore under no obligation to incorporate the limitations provided by

Dr. Pate into the hypothetical posed to the VE. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

Nevertheless, the Court finds that the Commissioner's decision should be reversed based on the ALJ's failure to rely on any medical opinion in formulating Plaintiff's mental RFC. The ALJ determined that both Tourette syndrome and bipolar disorder represented severe impairments, thus concluding that such impairments "significantly limit[] [Plaintiff's] …mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). The ALJ also included mental limitations in the assigned RFC, finding that Plaintiff is able to "understand, remember, and carry out simple and detailed instructions and to make judgments on simple and detailed work-related decisions; and occasionally interact with the public." AR 14. However, the only medical opinion in the record pertaining to Plaintiff's mental impairments belongs to Dr. Pate, and the ALJ explicitly rejected that opinion. AR 18. There is no other opinion from a medical source in the record pertaining to mental limitations. Thus, there was no medical opinion considered by the ALJ in fashioning the mental RFC.

Despite the absence of any such opinion, the ALJ proceeded to ascribe mental restrictions based on Plaintiff's diagnoses of Tourette syndrome and bipolar disorder. AR 14. The ALJ provided no discussion of this determination, instead stating merely that his findings as to Plaintiff's mental condition, which included "mild" restriction in activities of daily living, "moderate" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace, were "consistent with the medical evidence." AR 18. This does not, however, explain how the ALJ came to the specific mental limitations

included in the assigned RFC. There is no opinion provided by a consultative examiner, even though the Commissioner is entitled to obtain one under 20 C.F.R. § 404.1520b(c)(3). The ALJ determined that Plaintiff's mental impairment did not meet the criteria of Listing 12.04 (affective disorders), but did not provide any support for the mental RFC that was ultimately crafted. Such an omission warrants reversal under sentence four of 42 U.S.C. § 405(g). *See Morgan v. Astrue*, No. 10-207-KSF, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) ("Where … there is insufficient support for the ALJ's findings, the appropriate remedy is reversal and a sentence-four remand for further consideration.") (citing *Faucher*, 17 F.3d at 174).

It is clear that the ALJ, and not a physician, is ultimately charged with determining a Plaintiff's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)). However, the Sixth Circuit has held that an ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings." *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted). The ALJ in the instant case was entitled to reject the only opinion in the record that addressed Plaintiff's mental condition, the MSS completed by Dr. Pate. However, the Court finds that it was improper for the ALJ to make his own medical findings with respect to Plaintiff's mental limitations without the benefit of any medical opinion, and notes that this conclusion finds significant support from other district courts in this circuit. *See, e.g., Dragoiu v. Comm'r of Soc. Sec.*, No. 13-14786, 2015 WL 1245907, at *18 (E.D. Mich. Mar. 18, 2015) (remanding with instruction to obtain a proper medical source opinion to support the ALJ's mental RFC because the RFC determination "was not based on any medical opinion but was apparently formulated based on his own independent medical findings"); *Sparck v. Comm'r of Soc. Sec.*, No. 11-10521, 2012 WL 4009650, at *9 (E.D. Mich. Aug. 23, 2012), *report and recommendation adopted,*

2012 WL 4009852 (E.D. Mich. Sept. 12, 2012) (holding that although the ALJ reserves the right to decide a claimant's RFC, the ALJ must rely on medical opinions to support his conclusions regarding the claimant's mental limitations); *Wilson v. Comm'r of Soc. Sec.*, No. 13-cv-10158, 2013 WL 6078042, at *8 (E.D. Mich. Nov. 19, 2013) ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (internal citation omitted); *Guido v. Comm'r of Soc. Sec.*, No. 13-CV-13520, 2014 WL 4771929, at *13 (E.D. Mich. Sept. 24, 2014) (noting that an ALJ's formation of RFC by relying on medical evidence that itself did not contain any opinions as to claimant's mental functional limitations was error requiring remand) (internal citation omitted); *Chatterton v. Comm'r of Soc. Sec.*, No. 1:12-CV-284, 2013 WL 2353976, at *9 (S.D. Ohio May 29, 2013), *report and recommendation adopted*, 2013 WL 3224036 (S.D. Ohio June 25, 2013) ("There is not one single medical opinion supporting the ALJ's assessment of only 'mild' social functioning limitations. The Court therefore concludes that the ALJ impermissibly created her own lay medical opinion with regard to plaintiff's mental impairments in contravention of the applicable regulations and the weight of the evidence.").

Based on the ALJ's failure to rely on any medical opinion in fashioning Plaintiff's mental RFC, the Court finds that the RFC is not supported by substantial evidence, and thus recommends that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a redetermination of Plaintiff's RFC.

## V. RECOMMENDATION

For the above stated reasons, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 12) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further proceedings consistent with this Report and Recommendation.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge